IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMRIT KOHLI,<br><br>    Plaintiff,<br><br>  v.<br><br>MCKESSON CORP.,<br><br>    Defendant.<br>_____ / | No. C 13-03199 CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Pro se Plaintiff Amrit Kohli brought suit against Defendant McKesson Corporation, alleging discrimination in connection with his employment. See generally FAC (dkt. 21). Two motions are pending: Plaintiff's Motion to Change Venue (hereinafter "Venue Mot.," dkt. 18) and Defendant's Motion to Strike or Dismiss (hereinafter "MTD," dkt. 26). The Court hereby denies the first motion and grants the second motion, with prejudice.

## I. BACKGROUND

Plaintiff alleges as follows. He was hired by RelayHealth on January 6, 2012, and was employed there until November 23, 2012. FAC ¶¶ 1-2. He was an employee in exceptional standing. Id. ¶ 3. On November 27, 2012, Defendant forced Plaintiff onto unpaid disability leave. Id. ¶ 8. Defendant forbid Plaintiff from having any contact with his co-workers at RelayHealth, and vice versa. Id. ¶¶ 11-12. RelayHealth put Plaintiff on paid disability leave, and he subsequently received full paychecks in the month of December.

Id. ¶¶ 13-14. Defendant violated HIPAA laws, and demanded that Plaintiff submit to treatment by a psychiatrist. Id. ¶¶ 16-17. Plaintiff refused treatment. Id. ¶ 18. Plaintiff was required to check in with Defendant's human resources consultant daily between November 27, 2012 and his wrongful termination on March 4, 2013. Id. ¶ 25. Defendant stationed police officers in the lobby of RelayHealth's building, and instructed them to arrest Plaintiff if he appeared. Id. ¶ 26.

Plaintiff brought suit in San Francisco Superior Court in June 2013. See Not. of Removal (dkt. 1-1). Defendant removed, and, on July 18, 2013, moved to dismiss. See id.; Original Mot. (dkt. 4). Plaintiff moved to change venue. See generally Venue Mot. Then, on August 28, 2013, Plaintiff filed the FAC. See generally FAC. The FAC includes causes of action for wrongful termination, discrimination based on disability and race, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED"). Id. Defendant filed a motion to strike or dismiss the FAC. See generally MTD.

## II. LEGAL STANDARD

### A. Motion to Strike/Dismiss

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . ." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). While "detailed factual allegations" are not required, a complaint must include sufficient facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

2

For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the district court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to the plaintiffs. Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008). The district court need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements of a cause of action." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996).

### B. Motion to Change Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). District courts enjoy broad discretion in considering motions to transfer venue, and are to adjudicate motions for transfer according to "individualized, case-by-case consideration of convenience and fairness." Van Dusen v. Barrack, 376 U.S. 612, 622 (1964). "[T]he purpose of [section 1404(a)] is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Id. at 616.

When considering a motion to transfer venue, courts employ a two-step analysis. First, the court determines whether the action could have been initiated in the district to which transfer is sought. Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985). Second, if venue would have been appropriate, then the court weighs the convenience of parties and witnesses and the interest of justice. Van Dusen, 376 U.S. at 616. The moving party must shoulder the burden of showing that transfer is appropriate. Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006) (citing Carolina Cas. Co. v. Data Broad. Corp., 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001)).

//
//
//

## III. DISCUSSION

### A. Motion to Strike/Dismiss

Defendant's motion argues that the Court should either strike the FAC as untimely filed, or dismiss the FAC as failing to state a claim. The Court grants the motion on the basis of failure to state a claim.

#### 1. Motion to Strike as Untimely

Following removal, Defendant timely filed its original motion to dismiss on July 18, 2013. See generally Original Mot. Pursuant to Federal Rule of Civil Procedure 15, Plaintiff was entitled to amend his complaint within 21 days after service of the motion to dismiss. Fed. R. Civ. P. 15(a)(1)(B). That would be August 8, 2013. Plaintiff filed the FAC on August 26, 2013. See generally FAC. The FAC was therefore untimely. Nonetheless, as Defendant acknowledges, courts have some discretion in enforcing such deadlines. See MTD at 2; Reply re MTD (dkt. 29) at 2 ("courts sometimes disfavor striking pleadings on the basis of untimeliness"). Moreover, this Court already gave its tacit approval to the FAC, denying the original motion to dismiss as moot because "[a]lthough Plaintiff did not timely oppose the motion, he subsequently filed an amended complaint." See Order (dkt. 22) at 1. If the Court was going to find the FAC untimely, it would have done so then.

Accordingly, the Court does not strike the FAC as untimely.

#### 2. Motion to Dismiss

The FAC does, however, fail to state a claim.

##### a. Wrongful Termination

To state a claim for wrongful termination in violation of public policy, Plaintiff must allege: (a) an employer-employee relationship between Plaintiff and Defendant; (b) that Defendant terminated Plaintiff's employment (or took other adverse employment action); (c) that the adverse employment action was a violation of public policy; and (d) damages. See Holmes v. Gen. Dynamics Corp., 17 Cal. App. 4th 1418, 1426 n.8 (1993). The FAC fails to properly allege two of these elements.

1    First, the FAC fails to allege an employer-employee relationship between Plaintiff and
2 Defendant. The FAC actually asserts that RelayHealth, not Defendant, was Plaintiff's
3 employer. See FAC ¶ 1. It asserts, however, that Defendant should be liable because of the
4 respondeat superior doctrine (not relevant to a parent company and its subsidiary), because it
5 is RelayHealth's parent company (although there is no allegation of alter ego or agency
6 relationship[1]), and because Defendant "was the one making the orders to have Plaintiff's
7 Employment terminated." Id. at 4. These allegations are insufficient to plead an employer-
8 employee relationship.

9    Second, the FAC fails to allege a specific constitutional or statutory provision that
10 forms the basis of the public policy allegedly violated. See Lagatree v. Luce, Forward,
11 Hamilton & Scripps, 74 Cal. App. 4th 1105, 1111 (1999). Plaintiff's wrongful termination
12 claim is jumbled, alleging that "Defendant discriminated against Plaintiff due to his Race and
13 Nationality believing that Plaintiff was of Middle Eastern Descent, Defendant feared that
14 Plaintiff was violent and that's why they filed a restraining order against Plaintiff,"[2] that
15 "Defendants intentionally blocked Plaintiff from receiving any Worker's Compensation or
16 Disability Benefits because he refused to see their psychiatrist during his scheduled
17 Christmas vacation," and that "Defendant took actions governed by [HIPAA] LAWS without
18 informing Plaintiff that these actions were being taken." FAC at 5. Those allegations do not
19 put Defendant or the Court on notice of a cognizable legal theory upon which Plaintiff relies.
20 See Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1257 (1994) (court cannot be put "in
21 the position of having to guess at the nature of the public policies involved"); see also Hunter
22 v. Up–Right, Inc., 6 Cal.4th 1174, 1186 (1994) (Action for wrongful termination "must be
23 predicated on a fundamental, well-established, substantial policy that concerns society at
24 large rather than the individual interests of the employer and employee.").

---

26 [1] Moreover, the opposition brief argues not that McKesson was acting through RelayHealth, but that "RelayHealth . . . bears no responsibility for the actions of McKesson Corporation," and that "McKesson Corporation acted willfully, acted of its own discretion. . . ." Opp'n to MTD (dkt. 28) at 4.

28 [2] Needless to say, fearing that an employee is violent and filing a restraining order against him is not, in and of itself, a violation of public policy.

5

1  Accordingly, the Court dismisses this claim.

2  **b.  Discrimination Based on Disability and Race**

3  To state a claim for discrimination, Plaintiff must allege: (a) that he belongs to a
4  protected class; (b) that he was qualified for the position; (c) that he suffered an adverse
5  employment action; and (d) that employees with qualifications similar to his own were
6  treated more favorably. See Aragon v. Republic Silver State Disposal Inc., 292 F.3d 654,
7  658 (9th Cir. 2002). In a racial discrimination case, a plaintiff must allege that he is a
8  member of a recognized racial group. See Maduka v. Sunrise Hosp., 375 F.3d 909, 912 (9th
9  Cir. 2004). In a disability discrimination case, a plaintiff must allege that he is disabled
10 under the Americans with Disabilities Act ("ADA") and/or the California Fair Employment
11 and Housing Act ("FEHA"). See Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th
12 Cir. 1999). In either case, a complaint must contain sufficient factual allegations "to
13 plausibly suggest petitioners' discriminatory state of mind." Iqbal, 556 U.S. at 683.

14 The FAC's allegations of race and disability discrimination are unclear and
15 insufficient. They consist of three pages of generalized discussion of discrimination law
16 (apparently cut and pasted from some other source), and then the conclusory allegation that

> Plaintiff has shown that Defendant wanted to terminate his employment for discriminatory reasons. Defendant ordered Plaintiff not to communicate with his Co-Workers, and they also ordered his Co-Workers not to have any communication with Plaintiff. This tactic was masking the real reason that Defendant no longer wanted to employ Plaintiff by isolating him out of the company due [to] his mental illness and his race/nationality.

21 FAC at 9. These conclusory allegations fail to plausibly suggest a discriminatory state of
22 mind. See Iqbal, 556 U.S. at 683. Nor has Plaintiff adequately alleged that he is either
23 disabled,[3] a member of a recognized racial group,[4] or an employee of Defendant's.

---

[3] One may have "mental health issues," see FAC at 8, without being disabled.

[4] Plaintiff does allege that "when Defendant filed for their restraining order, they claimed that Plaintiff was of Middle Eastern Descent." FAC at 3. It is not clear whether he alleges that he is of Middle Eastern descent or whether he alleges that Defendants have falsely ascribed that identity to him. In any case, the restraining order post-dated Plaintiff's termination and included extensive bases for Defendant's fear of violence, none of which was his race. See RFJN Ex. 1 (dkt. 9-1) (restraining order dated March 5, 2013).

6

Accordingly, this claim is dismissed.

### c. IIED and NIED

In general, the Workers Compensation Act is an employee's exclusive remedy for claims against his employer for emotional distress. See Cole v. Fair Oaks Fire Protection Dist., 43 Cal.3d 148, 160 (Cal. 1987) ("when the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability."); see also Glenn v. Central Contra Costa Cty. Transit Authority, No. 9804940 CRB, 1999 WL 219728, at *3 (N.D. Cal. April 12, 1999) ("When an employee's claim is based on conduct normally occurring in the workplace, the claim is usually within the exclusive jurisdiction of the Workers Compensation Appeals Board."). The FAC's IIED and NIED claims here are both based on Plaintiff's having been terminated. See FAC at 10 ("intentionally terminated due to illegal practices" and "wrongful termination," having "caused Plaintiff's severe emotional distress"). Termination arises out of the employment relationship, and therefore such conduct is usually "covered by the workers' compensation exclusivity provisions." See Shoemaker v. Myers, 52 Cal. 3d 1, 25 (1990); see also Grotz v. Kaiser Found. Hosp., No. 12-3539 EMC, 2012 WL 5350254, at *10 (N.D. Cal. Oct. 29, 2012) (holding same).[5]

Accordingly, the Court dismisses this claim as well.

### B. Motion to Change Venue

Plaintiff's motion asks the Court to change venue to Oakland, asserting that "Plaintiff has changed residence to Oakland, and it would be more convenient for Plaintiff to attend his

---

[5] A plaintiff might be able to recover for intentional conduct where an employer's conduct has a "'questionable' relationship to the employment, an injury which did not occur while the employee was performing service incidental to the employment and which would not be viewed as a risk of the employment, or conduct where the employer or insurer stepped out of their proper roles." Cole, 43 Cal. 3d. at 161. However, Plaintiff's IIED and NIED claims do not allege such conduct.

7

1 future court dates in Oakland," and that "Plaintiff will not be able to get a fair trial in San
2 Francisco due to Plaintiff incorporating the San Francisco Police Department (SFPD) in his
3 complaint. Defendant's head of security at the McKesson Headquarters is a retired SFPD
4 Officer." Venue Mot. at 1-2.

Assuming that 28 U.S.C. § 1404 is the proper mechanism for Plaintiff's request,[6] the district to which transfer is sought is this same district, and so the Court's first consideration is met. See Hatch, 758 F.2d at 414. However, the second consideration, convenience of parties and witnesses and the interest of justice, is unmet. See Van Dusen, 376 U.S. at 616. Justice would not be served by transferring the case to the Oakland division. Defendant argues, and Plaintiff does not dispute, that "nearly every single witness in the case is located in San Francisco," and "every other individual affected by this case would be inconvenienced if this case were transferred." Opp'n to Venue Mot. at 4. Plaintiff voluntarily initiated suit in San Francisco. See Not. of Removal. In addition, there is no reason to believe that Plaintiff could not have a fair trial in this Court based on the marginal role of the San Francisco Police Department in this dispute; indeed, that police department is not even a party.

For the same reasons that transfer under section 1404 is inappropriate, intradistrict transfer pursuant to Local Rule 3-2(h) is also inappropriate. See Local Civil Rule 3-2(h) ("Whenever a Judge finds . . . that a civil action has not been assigned to the proper division within this district in accordance with this rule, or that the convenience of parties and witnesses and the interests of justice will be served by transferring the action to a different division within the district, the Judge may order such transfer.").

Accordingly, the Court denies the venue motion.

//
//
//

---

[6] Defendant argues that Plaintiff's *ex parte* motion under section 1404 was improper. See Opp'n to Venue Mot. (dkt. 24) at 5.

8

//

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss with prejudice,[7] and DENIES the Motion to Change Venue.

**IT IS SO ORDERED.**

Dated: October 21, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[7] Plaintiff has already amended his complaint in response to Defendant's original motion – which raised these same issues, see Original Mot. at 11-16 – and has not adequately corrected his allegations. See Leadsinger, Inc. v. BMG Music Publ'g., 512 F.3d 522, 532 (9th Cir. 2008) (leave to amend shall be denied if allowing amendment would be futile).